UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| SAMUEL KOMBA KAMBO, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| VS. | ) | Civil Action No.: SA-07-CV-800-XR |
| | ) | |
| DAYTON POPPELL, a Facility Administrator | ) | |
| for the Central Texas Detention Facility | ) | |
| of the GEO Group, Incorporated, | ) | |
| MARC MOORE, as Field Director of | ) | |
| Immigration and Customs Enforcement, an | ) | |
| Agency of the United States of America, | ) | |
| IMMIGRATION AND CUSTOMS | ) | |
| ENFORCEMENT, as an agency of the U.S.A., | ) | |
| THE DEPARTMENT OF HOMELAND | ) | |
| SECURITY, as an agency of the U.S.A., and | ) | |
| MICHAEL CHERTOFF, as the Secretary of | ) | |
| the Department of Homeland Security, | ) | |
| | ) | |
| Respondents. | ) | |

**ORDER**

Before the Court is Petitioner Samuel Komba Kambo's 28 U.S.C. § 2241 Habeas Corpus

Petition challenging his detention by the Bureau of Immigration and Customs Enforcement.

Respondents have challenged the petition on jurisdictional grounds. The Court finds that it has

jurisdiction over Petitioner's due-process challenge to section 1226(a), and further finds that it

violates Petitioner's due-process rights as applied. Accordingly, the writ shall issue.

**I. Background**

Petitioner Kambo is a citizen of Sierra Leone who has lived in the U.S. on diplomatic and

student visas since 1994. Kambo's last visa authorized him to remain in the U.S. until December

15, 2002.  In June 2001, he filed an I-485 application for adjustment of status to permanent resident, and that application remained pending until October 27, 2006.  In October 2006, DHS served Kambo with a notice to appear for an adjustment interview.  At the meeting on October 27, 2006, Kambo's application for permanent resident status was denied because the Government asserted that Kambo was inadmissible under § 237(a)(4)(D) and § 212(a)(3)(E)(iii) based on the government's belief that Kambo had participated in extra-judicial killings in 1992 while in Sierra Leone.[1]  Kambo was taken into custody and charged with removability due to his having remained in the United States longer than permitted, in violation of law (under § 237(a)(1)(B)[2]).

Pursuant to 8 U.S.C. § 1226(a), "[o]n a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States."[3]  Further, except as provided under section 1226(c) (governing certain classes of criminal aliens subject to mandatory detention), the Attorney General may either continue to detain the arrested alien or release the alien on bond or conditional parole pending the removal decision. DHS denied Kambo release on bond or conditional parole.[4]

---

[1]Section 237(a)(4)(D) provides that "deportable aliens" include "[a]ny alien described in clause (i), (ii), or (iii) of section 1182(a)(3)(E)."  8 U.S.C. § 1227(a)(4)(D).  Section 1182(a)(3)(E)(iii) provides that "[a]ny alien who, outside the United States, has committed, ordered, incited, assisted, or otherwise participated in the commission of ... (II) under color of law of any foreign nation, any extrajudicial killing, as defined in section 3(a) of the Torture Victim Protection Act of 1991 is inadmissible."  8 U.S.C. § 1182(a)(3)(E)(iii).

[2]"Any alien who is present in the United States in violation of this chapter or any other law of the United States, or whose nonimmigrant visa (or other documentation authorizing admission into the United States as a nonimmigrant) has been revoked under section 1201(i) of this title, is deportable."

[3] *See also* 8 C.F.R. § 1236.1(b)(1): "At the time of issuance of the notice to appear, or at any time thereafter and up to the time removal proceedings are completed, the respondent may be arrested and taken into custody under the authority of Form I-200, Warrant of Arrest."

[4]Section 1226(e) provides that "[t]he Attorney General's discretionary judgment regarding the application of this section shall not be subject to review.  No court may set aside any action or decision by the Attorney General under this section regarding the detention or release of any alien or the grant, revocation, or denial of bond or parole."  However, "where a provision precluding review is claimed to bar habeas review, the [Supreme] Court has required a

2

On November 7, 2006, Kambo petitioned the Immigration Judge for a custody redetermination. Under 8 C.F.R. § 1003.19(a), custody and bond determinations made by DHS may be reviewed by an Immigration Judge.[5]  However, under § 1003.19(h)(2)(I), an immigration judge may not redetermine conditions of custody imposed by the Service with respect to certain classes of aliens, including "[a]liens described in section 237(a)(4) of the Act."[6]  The Immigration Judge initially determined that because Kambo was being charged as removable due to his being out of status, the fact that the Government believed he might be an alien described in § 237(a)(4) of the Act did not divest the Immigration Judge of jurisdiction to redetermine custody.  The Immigration Judge then determined that Kambo was entitled to release pending resolution of the removal proceedings and ordered bond in the amount of $12,500.  DHS appealed, and invoked the automatic stay provision on 8 C.F.R. § 1003.19(i)(2).[7]  The BIA initially affirmed without written opinion on January 26, 2007.  On January 31, 2007, DHS moved the BIA for reconsideration and sought and

particularly clear statement that such is Congress' intent."  *Demore v. Kim*, 538 U.S. 510, 517 (2003). In 2003, the Supreme Court noted that "Section 1226(e) contains no explicit provision barring habeas review ...."  *Id.*  However, as part of the REAL-ID Act, Congress added section 1252(a)(5), which provides in part that "For purposes of this chapter [Chapter 12, of which section 1226 is part], in every provision that limits or eliminates judicial review or jurisdiction to review, the terms 'judicial review' and 'jurisdiction to review' include habeas corpus review pursuant to section 2241 of Title 28, or any other habeas corpus provision, sections 1361 and 1651 of such title, and review pursuant to any other provision of law (statutory or nonstatutory)."  Thus, by operation of section 1252(a)(5), section 1226(e) now applies to habeas corpus review.  The Court will consider the effect of section 1226(e) below.

[5]  8 C.F.R. § 1003.19(a) provides that "[c]ustody and bond determinations made by the service pursuant to 8 CFR part 1236 may be reviewed by an Immigration Judge pursuant to 8 CFR part 1236."

[6]  However, nothing in that paragraph "shall be construed as prohibiting an alien from seeking a determination by an immigration judge that the alien is not properly included within [paragraph (h)(2)(i)(C), which includes '[a]liens described in section 237(a)(4) of the Act']."  8 C.F.R. § 1003.19(h)(2)(ii).

[7]"Automatic stay in certain cases. In any case in which DHS has determined that an alien should not be released or has set a bond of $10,000 or more, any order of the immigration judge authorizing release (on bond or otherwise) shall be stayed upon DHS's filing of a notice of intent to appeal the custody redetermination (Form EOIR-43) with the immigration court within one business day of the order, and, except as otherwise provided in 8 CFR 1003.6(c), shall remain in abeyance pending decision of the appeal by the Board. The decision whether or not to file Form EOIR-43 is subject to the discretion of the Secretary."

received a discretionary stay under 8 C.F.R. § 1003.19(i)(1).[8]

On April 4, 2007, the BIA issued its order on reconsideration of the bond/custody determination appeal.  *See* Petitioner's Exhibit E.  It held that the government need not lodge a removal charge under § 237(a)(4) to deprive the Immigration Judge of jurisdiction to redetermine custody conditions.  The BIA concluded that "it is not necessary for the DHS to actually charge the alien under section 237(a)(4) for the court to be divested of jurisdiction pursuant to 8 C.F.R. § 1003.19(h)(2)(i)(C)."  Rather, "[i]t is enough if the evidence establishes that, for purposes of a bond determination, the alien is described in section 237(a)(4) of the Act."  However, the BIA acknowledged that Immigration Judges do have jurisdiction to determine whether an alien is properly included in the category of "aliens described by section 237(a)(4)" under 8 C.F.R. § 1003.19(h)(2)(ii).  The BIA concluded that an alien would not be considered "properly included" in the category removing the Immigration Judge's jurisdiction if the Judge or the BIA is convinced that, despite the absence of a section 237(a)(4) removability charge, the DHS would be substantially unlikely to prevail at the merits hearing, or on appeal, with a charge of removal under section 237(a)(4) of the Act, if such a charge were lodged.  Thus, "where the basis for detention is not included in the charging document, the alien must be given notice of the circumstances or convictions that provide the basis for mandatory detention and an opportunity to challenge the

_____

[8]"General discretionary stay authority. The Board of Immigration Appeals (Board) has the authority to stay the order of an immigration judge redetermining the conditions of custody of an alien when the Department of Homeland Security appeals the custody decision or on its own motion. DHS is entitled to seek a discretionary stay (whether or not on an emergency basis) from the Board in connection with such an appeal at any time."
Further, "DHS may seek a discretionary stay under the existing provisions of 8 CFR 1003.19(i)(1) if the Board has not decided the appeal by the time the automatic stay is expiring. The rule makes clear that DHS may submit a motion for discretionary stay at any time after the filing of its notice of appeal of the custody decision, even well in advance of the 90-day deadline, and can incorporate by reference the arguments in its custody brief in favor of continued detention of the alien, as provided in section 236 of the INA (8 U.S.C. 1226), during the pendency of the removal proceedings against the alien."  71 Fed. Reg. 57873.

detention before the Immigration Judge during the bond redetermination hearing."  The BIA remanded to the Immigration Judge to make factual findings regarding whether Kambo is "described in" section 212(a)(3)(E) without regard to whether he had been charged as removable on that ground.

On May 11, 2007, the Immigration Judge issued his decision on remand, finding that the government was unlikely to prevail.  The Immigration Judge reinstated the bond and ordered Kambo's release on May 14.  On May 18, 2007, DHS refused Kambo's family's tender of the bond amount, filed an appeal with the BIA, and moved for a discretionary stay of the custody redetermination order.  On May 22, 2007, the BIA granted a stay and ordered briefing.  Briefing was completed on July 17, 2007 (DHS moved for an extension of time to submit its brief).  That appeal remains pending.

On May 30 and 31, the Immigration Judge held a hearing in Kambo's removal proceeding.[9] On June 29, 2007, the Immigration Judge issued his decision.  Kambo admitted being out of status, and the Immigration Judge sustained the charge of removability.  However, the Immigration Judge found that Kambo is not an alien described in section 237(a)(4) and that he was thus admissible, and then granted his request for an adjustment of status, thereby granting him legal permanent resident status.  DHS again appealed this decision.  That appeal also remains pending.

On September 5, 2007, Kambo filed a petition for writ of habeas corpus and motion for preliminary injunction in this Court challenging his continued detention.  *See Kambo v. Moore, et. al.*, Civ. No. SA-07-CV-724-XR (W.D. Tex.).  Kambo named Marc Moore, the ICE Field Director, as respondent.  Kambo is currently being housed in a contract facility.  This Court held a hearing on

---

[9] The Immigration Judge initially intended to proceed with the hearing on April 12, 2007, but DHS moved for a continuance.  The Immigration Judge granted the continuance over Kambo's objection.

September 19.  At the hearing, respondent asserted that the case should be dismissed because Kambo had not named the proper respondent.  The Court agreed and dismissed Kambo's petition for writ of habeas corpus on October 4.  The Court directed Kambo to re-file, naming the warden of his detention facility as the respondent.  Kambo then filed the instant petition for writ of habeas corpus and motion for preliminary injunction.  Kambo alleges that his detention violates the Fifth Amendment's guarantee of liberty, as well as certain federal statutes and regulations.  Kambo does not challenge the merits of his case (whether he is removable or entitled to relief from removal), rather "he challenges the collateral issue of the legality of the Government's detention of him pending removal proceedings."  Kambo asserts several claims for relief.

In his first claim, he asserts that the BIA's interpretation of 8 C.F.R. § 1003.19(h)(2)(i)(C), which allows DHS to hold Kambo for reasons unrelated to his charge of removability, violates Kambo's substantive and procedural due process rights.  Kambo asserts that the Government may not detain persons for reasons unrelated to the actual charge that brought about the detention absent a compelling justification and narrow tailoring.  In his second, related claim, Kambo argues that the BIA is without authority to interpret 8 C.F.R. § 1003.19(h)(2)(i)(C) to allow the Government to hold Kambo for reasons unrelated to his charge of removability.  Kambo contends that the BIA's construction is unreasonable and raises constitutional concerns, and asks the Court to set aside the BIA's construction under the Administrative Procedure Act, 5 U.S.C. § 702(2)(A).

In his third claim for relief, Kambo argues that DHS is without authority to detain Kambo based on an appeal of the bond issue after the Immigration Judge has ruled in Kambo's favor on the merits.  Kambo contends that DHS is detaining Kambo on a discretionary stay of the Immigration Judge's bond order, which found that DHS was unlikely to prevail on the merits, and since DHS did

not prevail on the merits, the bond appeal is moot, and no regulation grants DHS the authority to continue to detain Kambo in such a circumstance.

In his fourth claim for relief, Kambo asserts that the BIA's use of its automatic and discretionary stay powers violates his right to due process. Kambo points to several cases holding the automatic stay unconstitutional because it could lead to indefinite detention. In response, the Attorney General has since amended the automatic stay provision so that it will lapse after ninety days. 71 Fed. Reg. 57873, 57874, 57879, 57884; 8 C.F.R. § 1003.6(c). Kambo argues that the Government now invokes, and the BIA grants, the discretionary stay to extend the length of the automatic stay indefinitely. Kambo contends that, though the BIA is not supposed to grant a discretionary stay without a showing by the Government that it is likely to succeed on its appeal and would suffer irreparable harm in the meantime, the BIA granted both discretionary stays in Kambo's proceedings without requiring the Government to meet this burden or providing Kambo an opportunity to oppose the stays.

In his fifth claim, Kambo argues that his detention has been excessively and arbitrarily lengthy, in violation of his right to liberty under the due process clause of the Fifth Amendment.

## II. Analysis

### A. Whether this Court has jurisdiction?

Kambo seeks habeas relief pursuant to 28 U.S.C. § 2241, which provides that district courts may grant writs of habeas corpus within their respective jurisdictions for persons in custody in violation of the Constitution or laws or treaties of the United States. "[T]he intersection of immigration and habeas corpus marks an evolving and challenging area of the law ...." *Soberanes v. Comfort*, 388 F.3d 1305, 1312 (10th Cir. 2004). Determining the existence and/or extent of this

Court's habeas corpus jurisdiction in immigration areas is complicated by the myriad jurisdiction-stripping provisions of the various immigration laws enacted and recently amended by Congress. DHS argues that this Court lacks habeas jurisdiction in this case under the REAL-ID Act, which became effective May 11, 2005. The REAL-ID Act amended certain paragraphs of 8 U.S.C. § 1252 to preclude habeas review.

As noted previously, DHS's authority to detain Kambo during his removal proceedings arises under 8 U.S.C. § 1226. The Attorney General previously had broad discretion to determine whether, and on what terms, an alien, including a criminal alien, arrested on suspicion of being deportable should be released pending the deportation hearing. *See Reno v. Flores*, 507 U.S. 292 (1993). Congress has curtailed the Attorney General's discretion with regard to criminal aliens, providing in section 1226(c) that the Attorney General "shall take into custody" certain classes of criminal aliens and may release them only in narrowly prescribed circumstances relating to witness protection. Thus, under section 1226(c), certain classes of criminal aliens are subject to mandatory detention.[10] The Attorney General retains his discretion to detain other classes of aliens under section 1226(a), however. It is undisputed that Kambo is not subject to mandatory detention, and is being detained at the discretion of the Attorney General and his delegates under section 1226(a).

### 1. § 1252(g)

The Government contends that this Court lacks jurisdiction under 8 U.S.C. § 1252(g), which provides that:

> Except as provided in this section and notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of title 28, United States Code, or

---

[10] Congress has also enacted specific provisions regarding detention of terrorists and suspected terrorists. Those provisions are not at issue here.

> any other habeas corpus provision, and sections 1361 and 1651 of such title, no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this Act.

8 U.S.C. § 1252(g). The Government asserts summarily that "[t]his case clearly involves the Attorney General's commencing proceedings and adjudicating cases." However, the Supreme Court has held that this subsection "applies only to three discrete actions that the Attorney General may take: [the] 'decision or action' to 'commence proceedings, adjudicate cases, or execute removal orders.'" *Reno v. American-Arab Anti-Discrimination Committee*, 525 U.S. 471, 483 (1999). As a result, Respondent must do more than simply assert that Petitioner's claims "involve" the Attorney General's commencing proceedings and adjudicating cases. *Id.* at 483 (noting that there are many other decisions or actions that may be part of the deportation process, and concluding that "[i]t is implausible that the mention of three discrete events along the road to deportation was a shorthand way of referring to all claims arising from deportation proceedings"). In addition, courts have held that section 1252(g) only applies in cases involving final orders of removal. *See, e.g.*, *Nadarajah v. Gonzales*, 443 F.3d 1069 (9th Cir. 2006); *Hernandez v. Gonzales*, 424 F.3d 42 (1st Cir. 2005) ("Because we conclude that the jurisdiction-stripping provisions of the Real ID Act do not apply to this petition, which challenges only the petitioner's detention rather than his removal (no administrative removal order has issued), we direct the Clerk to transfer this case back to the district court.").[11] It is undisputed that this is not such a case. Thus, the Court concludes that section 1252(g) does not preclude an exercise of jurisdiction in this case.

---

[11] The Supreme Court also held that § 1252(g) applied only to "transitional cases," which were those cases pending on the effective date of IIRIRA, but that, "even after all the transitional cases have passed through the system, § 1252(g) as we interpret it serves the continuing function of making it clear that those specified decisions and actions, which ... some courts had held *not* to be included within the non-final-order review prohibition of § 1105a, *are* covered by the 'zipper' clause of § 1252(b)(9)." *Reno v. AADC*, 525 U.S. at 483.

**2. § 1226(e) & § 1252(a)(2)(B)(ii)**

Section 1226(e) provides:

(e) Judicial review

The Attorney General's discretionary judgment regarding the application of this section shall not be subject to review.  No court may set aside any action or decision by the Attorney General under this section regarding the detention or release of any alien or the grant, revocation, or denial of bond or parole.

As noted, under § 1252(a)(5), "[f]or purposes of [Chapter 12 of Title 8, which includes section 1226], in every provision that limits or eliminates judicial review, the terms 'judicial review' and 'jurisdiction to review' include habeas corpus review pursuant to section 2241 of Title 28, or any other habeas corpus provision, sections 1361 and 1651 of such title, and review pursuant to any other provision of law (statutory or nonstatutory)."[12]

Section 1252(a)(2)(B)(ii) provides:

(B) Denials of discretionary relief

Notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of Title 28, or any other habeas corpus provision, and sections 1361 and 1651 of such title, and except as provided in subparagraph (D), and regardless of whether the judgment, decision, or action is made in removal proceedings, no court shall have jurisdiction to review–
> ...
> (ii) any other decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified under this subchapter to be in the discretion of the Attorney General or the Secretary of Homeland Security, other than the granting of relief under section 1158(a) of this title.

Though this section was in existence before Congress enacted the REAL-ID Act on May 11, 2005,

---

[12]The Court presumes that this provision was added in response to the Supreme Court's decision in *INS v. St. Cyr*, 533 U.S. 289 (2001), in which the Court noted that, in the immigration context, the terms "judicial review" and "habeas corpus" have historically distinct meanings, and thus the use of the term "judicial review" does not speak with sufficient clarity to bar jurisdiction pursuant to the general habeas statute. *Id.* at 312.  The Court finds that this provision similarly bars review under the APA, the Declaratory Judgment Act, or mandamus.

the REAL-ID Act amended the section by adding the language "including section 2241 of Title 28, or any other habeas corpus provision, and sections 1361 and 1651 of such title, and except as provided in subparagraph (D)" as well as by adding the language "and regardless of whether the judgment, decision or action is made in removal proceedings."  Thus, section 1252(a)(2)(B)(ii) applies to discretionary actions or decisions made in or out of removal proceedings, even when there is no final order of removal, "the authority for which is specified" under the subchapter of Title 8 that governs immigration proceedings. *Jilin Pharmaceuticals v. Chertoff*, 447 F.3d 196, 200 n.5 (3d Cir. 2006); *Zhao v. Gonzales*, 404 F.3d. 295, 302 (5th Cir. 2005); *Anyanbadejo v. Chertoff*, 462 F. Supp. 2d 736, 741 (S.D. Tex. 2006).  In addition, after REAL-ID, the section precludes review even in habeas corpus proceedings.  Pursuant to 1252(a)(2)(D)[13] and 1252(b)(9),[14] exclusive jurisdiction over most issues now rests with the Courts of Appeals through petitions for review of a final order of removal.

Both section 1252(a)(2)(B)(ii) and section 1226(e) limit this Court's jurisdiction to review discretionary decisions – section 1252(a)(2)(B)(ii) precludes any review of a decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified

---

[13] "(D) Judicial review of certain legal claims.  Nothing in subparagraph (B) or (C), or in any other provision of this chapter (other than this section) which limits or eliminates judicial review, shall be construed as precluding review of constitutional claims or questions of law raised upon a petition for review filed with an appropriate court of appeals in accordance with this section."

[14] "(b)(9) Consolidation of questions for judicial review.  Judicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United States under this subchapter shall be available only in judicial review of a final order under this section. Except as otherwise provided in this section, no court shall have jurisdiction, by habeas corpus under section 2241 of Title 28, or any other habeas corpus provision, by section 1361 or 1651 of such title, or by any other provision of law (statutory or nonstatutory), to review such an order or such questions of law or fact."

under Subchapter II of Chapter 12 to be in their discretion and section 1226(e) specifically precludes review of the "Attorney General's discretionary judgment regarding the application of" section 1226. Determining what exactly is removed from this Court's jurisdiction under these statutes is a complicated task. The Court has located some analogous precedents that provide guidance on this difficult question.

In *Loa-Herrera v. Trominski*, 231 F.3d 984 (5th Cir. 2000), the Fifth Circuit considered the claims of a class of legal permanent residents (LPRs) who argued that they were entitled to notice and a hearing to determine whether they should be paroled within the United States pending a final determination in their removal proceedings. The District Court granted injunctive relief requiring the INS to hold such hearings. The Fifth Circuit held that federal courts have no jurisdiction to review the Attorney General's parole decisions. Relying on 8 U.S.C. § 1226(e), the Fifth Circuit noted: "The plaintiffs argue that, pursuant to *Mathews v. Eldridge*, 424 U.S. 319, 334 (1976), due process requires the INS to provide an LPR with notice of his right to parole within the United States and with a parole hearing before the Attorney General decides how to exercise her discretion. Congress, however, has denied the district court jurisdiction to adjudicate deprivations of the plaintiffs' statutory and constitutional rights to parole." *Loa-Herrera*, 231 F.3d at 990-91 (footnotes omitted). The Court noted that "[t]he Attorney General is vested with broad powers over the custody of all aliens (including LPR's) against whom deportation or exclusion [now referred to collectively as removal] proceedings are pending" and noted that the Attorney General's discretion regarding whether to parole the LPRs was derived from § 1226(a). *Loa-Herrera*, 231 F.3d at 990. It concluded, "[i]n sum, '[t]he Attorney General's discretionary judgment regarding the application of' parole—including the manner in which that discretionary judgment is exercised, and whether the

12

procedural apparatus supplied satisfies regulatory, statutory, and constitutional constraints—is 'not
... subject to review.'" § 1226(e).  *Loa-Herrera*, 231 F.3d at 991.  The Court then vacated the district
order requiring hearings without reaching the merits, but noted the Executive Branch's obligation
to ensure compliance with the Constitution.

In *Hatami v. Chertoff*, 467 F. Supp. 2d 637 (E.D. Va. 2006), Petitioner Hatami filed a petition
for writ of habeas corpus challenging the immigration judge's decision to deny him bond during the
pendency of his removal proceedings.  The respondent moved for dismissal under sections
1252(a)(2)(B)(ii), 1226(e), and 1252(b)(9).  The court stated that the "essential question is whether
a federal district court has jurisdiction where, as here, the petitioner challenges the immigration
judge's bond decision and the adequacy of the procedures used in reaching that decision."  The court
concluded that section 1252(a)(2)(B)(ii) clearly precludes review of bond decisions because those
are within the Attorney General's discretion.  The court held that, since it appeared that the
immigration judge adhered to the mandated procedures and that Hatami had received a meaningful
review of his bond petition to the extent contemplated by the regulations, section 1252(a)(2)(B)(ii)
barred judicial review of the result.  The court stated that "[a]s long as the challenge is to the form
of the bond hearing, § 1252(a)(2)(B)(ii) precludes judicial review."  *Id.* at 640.  The court did note
that "Hatami's petition does not challenge the constitutionality of the statutory framework permitting
his detention without bail."  *Id.* at 640-41.  Thus, the court concluded that Hatami's challenge was
unreviewable because, "he challenges not the legislation establishing the framework for bond
decisions, but rather the manner and form of the 'operational decision' to deny his bond application."
*Id.* at 640 (citing *Loa-Herrera*, 231 F.3d at 991).  The court then held that § 1226(e) also precluded
review, as did § 1252(b)(9), the "unmistakable zipper clause" that consolidates in the court of

appeals judicial review of all legal and factual questions arising from actions taken to remove an alien. *Hatami*, 467 F. Supp. 2d at 641.

At least two other district courts have held that sections 1252(a)(2)(B)(ii) and 1226(e) do not deprive a district court of habeas jurisdiction to review constitutional challenges to detention under § 1226(a). In *Ali v. Achim*, No. 04 C 2772, 2004 WL 1977436 (N.D. Ill Aug. 30, 2004), Ali alleged that his civil detention of twenty-two months during his removal proceedings violated the Fifth Amendment's Due Process Clause and deprived him of liberty without due process. The government argued that § 1252(a)(2)(B)(ii) and § 1226(e) precluded jurisdiction over the habeas petition. The Acting Officer in Charge of the Milwaukee Immigration Office had concluded that Ali should remain in custody pending a final determination of his case under § 1226(a). The immigration judge granted Ali's application for withholding of removal to Somalia, and DHS appealed. The BIA sustained the appeal and the Immigration Judge granted deferral of removal under the Convention Against Torture, and DHS appealed. While the first appeal was pending, Ali asked the immigration judge to release him on bond, and the Judge ordered Ali's release on payment of a $5000 bond. The Government filed an automatic stay of the decision. In deciding that it had jurisdiction over the habeas petition, the court concluded that Ali was "not asking the Court to review the Attorney General's discretionary decision to detain him. If Ali sought such relief, the Court would not have jurisdiction to do so. Ali, instead, challenges the constitutionality of his continued detention and the statute that has enabled Respondents to continue his detention. Such a challenge falls within this Court's jurisdiction." *Id.* at *3. Ali asserted that he was challenging the Government's authority to continue detention on the specific facts of his case, arguing that it was no longer reasonable in light of the purpose for the detention. *Id.* at *4. The court also concluded

14

that section 1226(e) did not bar review because it does not expressly bar habeas review[15] and because the constitutionality of the statute itself could still be challenged in any event.

Similarly, in *Fofana v. Melendez*, No. C05-1775-RSM, 2006 WL 2009109 (W.D. Wash July 17, 2006), the court considered a pro se petition for writ of habeas corpus brought to challenge Fofana's continued detention while in removal proceedings.  The court rejected the Government's challenge to its jurisdiction, concluding that "petitioner does not seek review of the Attorney General's exercise of discretion, but raises a constitutional challenge to his continued detention by the Attorney General without bond."  *Id.* at *2.

The Court agrees with these district court decisions that, even after passage of the REAL-ID Act, detained aliens may bring habeas corpus challenges to the constitutionality of the statutory framework that permits their detention and to the extent of the Attorney General's authority under the detention statute.  *See also Parlak v. Baker*, 374 F. Supp. 2d 551, 559 (E.D. Mich. 2005) ("As an initial matter, the Court finds that it has habeas jurisdiction to determine whether Petitioner is being detained in violation of his statutory and constitutional rights."), *vacated and appeal dismissed as moot*, 2006 WL 3634385 (6th Cir. 2006).   In *Zadvydas v. Davis*, 533 U.S. 678 (2001), the Court had considered the impact of § 1252(a)(2)(B)(ii) on detained aliens' challenges to their continued detention after a final order of removal had been issued.  The Court noted that "[t]he aliens here, however, do not seek review of the Attorney General's exercise of discretion; rather, they challenge the extent of the Attorney General's authority under the post-removal-period detention statute.  And

---

[15]While § 1226(e) itself does not expressly bar habeas review, as held by the Supreme Court in *Demore v. Kim*, 538 U.S. 510 (2003), the district court in *Ali* appears to have overlooked the 2005 REAL-ID Act amendment to § 1252(a)(5), which states that "in every provision that limits or eliminates judicial review or jurisdiction to review, the terms 'judicial review' and 'jurisdiction to review' include habeas corpus review pursuant to section 2241 of Title 28, or any other habeas corpus provision."

the extent of that authority is not a matter of discretion." *Id.* at 688.  The Court then cited § 1226(e) as a "see also."  The Court concluded that "§ 2241 habeas corpus proceedings remain available as a forum for statutory and constitutional challenges to post-removal-period detention."

In *Demore v. Kim*, 538 U.S. 510, 516-17 (2003), the Supreme Court concluded that section 1226(e) did not preclude all review of habeas petitions challenging detention under § 1226(c) (the mandatory detention provision for criminal aliens).  The court noted that, "respondent does not challenge a 'discretionary judgment' by the Attorney General or a 'decision' that the Attorney General has made regarding his detention or release.  Rather, respondent challenges the statutory framework that permits his detention without bail."  The Court concluded that "[section 1226(e)'s] clear text does not bar respondent's constitutional challenge to the legislation authorizing his detention without bail."  *Id.* at 517.  Thus, "the federal courts have jurisdiction to review a constitutional challenge to § 1226(c)."  *Id.*  On the merits, the Court concluded that the detention of an alien who conceded that he was deportable, for the limited period of his removal proceedings, did not violate due process.

In an unpublished 2005 decision issued before the effective date of the REAL-ID Act,[16] the Fifth Circuit considered a challenge to detention under § 1226(a).  *Oyelude v. Chertoff*, 125 Fed. Appx. 543 (5th Cir. Mar. 11, 2005).  The court rejected DHS's argument that section 1226(e) stripped the courts of jurisdiction, concluding that "[s]ection 1226(e) may strip us of jurisdiction to review judgments designated as discretionary under the pertinent language of the statute, but it does not deprive us of all authority to review statutory and constitutional challenges.  We retain jurisdiction to review Oyelude's detention insofar as that detention presents constitutional issues,

---

[16]REAL-ID became effective May 11, 2005.

such as those raised in a habeas petition." *Id.* at 546 (citing *Kim*, 538 U.S. at 516-17). The Fifth Circuit concluded that *Demore v. Kim* did not preclude a challenge on the merits to detention under § 1226(a) because *Kim* did not directly address the constitutionality of non-§ 1226(c) detentions. The court remanded to the district court for a determination as to whether the petitioner's detention was constitutional under § 1226(a), but expressed no view on the ultimate merits. 125 Fed. Appx. at 547. On remand, petitioner's case was dismissed as moot because he had been released on supervision after a final determination of the BIA.

Though *Zadvydas*, *Demore*, and *Oyelude* all pre-date the effective date of REAL-ID, nothing in REAL-ID affects their holdings that federal district courts retain habeas jurisdiction over constitutional challenges to the statute that permits detention. Thus, though section 1226(e) and section 1252(a)(2)(B)(ii) preclude review of discretionary decisions or actions, they still do not preclude constitutional challenges to the legislation authorizing detention or to the extent of the Attorney General's authority under the statute.

However, the Court finds that the Fifth Circuit's construction of § 1226(e) in *Loa-Herrera* is controlling precedent with regard to this habeas proceeding given the enactment of § 1252(a)(5). Under *Loa-Herrera*, the Attorney General's discretionary judgment regarding the application of release and bond provisions—"including the manner in which that discretionary judgment is exercised, and whether the procedural apparatus supplied satisfies regulatory, statutory, and constitutional constraints"—is not subject to review. What this means exactly in light of *Zadvydas* and *Demore* is difficult to determine. However, as discussed below, the Court finds that it precludes review of Kambo's first, second, and fourth claims regarding 8 C.F.R. § 1003.19(h)(2)(i)(c) and the use of automatic and discretionary stays, as these decisions are within the discretion of the Attorney

17

General and his delegates.

### 3. § 1252(b)(9)

The Court also concludes that § 1252(b)(9) does not preclude review of a constitutional challenge to section 1226(a) or the extent of the Attorney General's authority thereunder. Section 1252(b)(9) channels review of all issues into the court of appeals. It states: "Judicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United States under this subchapter, shall be available only through judicial review of a final order under this section." Further, REAL-ID added the following sentence: "Except as otherwise provided in this section, no court shall have jurisdiction, by habeas corpus under section 2241 of Title 28, or any other habeas corpus provisions, by section 1361 or 1651 of such title, or by any other provision of law (statutory or nonstatutory), to review such an order or such questions of law or fact." The Eleventh Circuit has noted that this provision "unambiguously divests all courts of habeas jurisdiction over cases that fall within its purview." *Madu v. U.S. Attorney General*, 470 F.3d 1362,1367 (11th Cir. 2006). However, section 1252(b) is "equally clear that subsection (b)(9) applies only '[w]ith respect to review of an order of removal.'" *Id.* "Moreover, while the REAL ID Act amended § 1252(b)(9) by adding an explicit bar on habeas jurisdiction over certain claims, the Act did not expand the scope of (b)(9) by making it applicable to cases other than those involving 'review of an order of removal.'" *Id.* Thus, the Eleventh Circuit found that section 1252(b)(9) does not apply to cases that do not involve review of an order of removal. *See also Nnadika v. Attorney General*, 484 F.3d 626 (3d Cir. 2007) (noting that REAL ID distinguishes between those challenges brought by an alien to a final administrative order of removal and those challenges made to other

18

aspects of the administrative proceedings); *Singh v. Gonzles*, __ F.3d __, 2007 WL 2406862 (9th Cir. 2007) (concluding that sections 1252(a)(5) and (b)(9) do not preclude habeas review of challenges not involving a final order of removal); *see also Hernandez v. Gonzales*, 424 F.3d 42 (1st Cir. 2005) (concluding that the jurisdiction-stripping provisions of the REAL ID Act do not apply to petitions challenging only petitioner's detention rather than his removal when no administrative order had issued)(citing H.R. Cong. Rep. No. 109-72, at 2873 (May 3, 2005)(REAL ID Act was not intended to preclude habeas review over challenges to detention that are independent of challenges to removal orders)).[17]

In this case, there has been no order of removal, much less a final order of removal. In addition, as discussed *infra*, it appears likely that there may never be a final order of removal. If that is the case, Kambo would have no forum to raise his constitutional challenge to section 1226(a) other than via this habeas corpus proceeding. *See Zadvydas v. Davis*, 533 U.S. 678, 692 (2001) ("This Court has suggested, however, that the Constitution may well preclude granting 'an administrative body the unreviewable authority to make determinations implicating fundamental rights.'").

### 4. Extent of Jurisdiction

The Court therefore finds that it has jurisdiction to consider a constitutional challenge to section 1226(a) and the extent of the Attorney General's authority under section 1226(a). However, under section 1226(e) and the Fifth Circuit's decision in *Loa-Herrera*, as well as section 1252(a)(2)(B)(ii), the Court finds that it does not have jurisdiction to review the decision to deny release on bond itself or the Attorney General's discretionary judgment regarding the application of

---

[17]The Court notes that *Pulido-Reyes v. Moore*, SA-06-CA-0828-OG, which was cited by Respondent in 07-cv-724, did involve a challenge to a removal order, and is thus distinguishable from this case.

1226(a), "including the manner in which that discretionary judgment is exercised, and whether the procedural apparatus supplied satisfies regulatory, statutory, and constitutional constraints." *Loa-Herrera*, 231 F.3d at 991; *see also Parra v. Perryman*, 172 F.3d 954, 957 (7th Cir. 1999) ("Section 1226(e) likewise deals with challenges to operational decisions, rather than to the legislation establishing the framework for those decisions."). *But see Sierra v. INS*, 258 F.3d 1213, 1217 (10th Cir. 2001) (holding that § 1252(a)(2)(B)(ii) did not bar challenge to the constitutionality of the procedures used in alien's parole proceeding because it is never within the Attorney General's discretion to act unconstitutionally).

Application of these principles depends in large part on what is included in "the manner in which [the Attorney General's discretionary judgment under section 1226(a)] is exercised" and "whether the procedural apparatus supplied satisfies regulatory, statutory, and constitutional constraints." Certainly, the Court has no jurisdiction to review DHS's decision to retain custody of Kambo without bond on the merits. Under section 1226(a), the Attorney General has broad discretion to detain an alien. Section 1226(a) provides that "an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States." The use of the term "may" indicates discretion. There are no limitations on or standards for exercising that discretion in the statute. Further, "[e]xcept as provided in subsection (c)," which is not applicable here, "pending such decision [on whether the alien is to be removed], the Attorney General may continue to detain the arrested alien." 8 U.S.C. § 1226(a). Again, there are no express limitations on or standards for the Attorney General's exercise of discretion to continue to detain the alien. Further, under section 1226(e), no court may review the Attorney General's "discretionary judgment regarding the application of this section" or "set aside any action or decision by the Attorney General

under this section regarding the detention ... of any alien or ... denial of bond." 8 U.S.C. § 1226(e).

The Government has issued extensive regulations governing custody and detention.  Section 1236.1(c)(8) provides that "[a]ny officer authorized to issue a warrant of arrest may, in the officer's discretion, release an alien not described in section 236(c)(1) of the Act, under the conditions at section 236(a)(2) and (3) [regarding bond and work authorization]; provided that the alien must demonstrate to the satisfaction of the officer that such release would not pose a danger to property or persons, and that the alien is likely to appear for any future proceedings." 8 C.F.R. § 1236.1(c)(8). Further, "[a]fter an initial custody determination by the district director, including the setting of a bond, the respondent may, at any time before an order under 8 CFR part 1240 becomes final, request amelioration of the conditions under which he or she may be released.  Prior to such final order, and except as otherwise provided int his chapter, the immigration judge is authorized to exercise the authority in section 236 [section 1226] of the Act to detain the alien in custody, release the alien, and determine the amount of bond, if any, under which the respondent may be released, as provided in § 1003.19 of this chapter." 8 C.F.R. § 1236.1(d)(1).  Further, "the alien or the Service may appeal the decision of an immigration judge pursuant to paragraph (d)(1) of this section."  *Id.* § 1236.1(d)(3)(i).  "The filing of an appeal from a determination of an immigration judge or district director under this paragraph shall not operate to delay compliance with the order (except as provided in § 1003.19(i)), nor stay the administrative proceedings or removal."  *Id.* § 1236.1(d)(4). Last, section 1236.1 provides that "[s]ubject to the provisions of this section, the provisions of § 1003.19 of this chapter shall govern availability to the respondent of recourse to other administrative authority for release from custody."  *Id.* § 1236.1(c)(10).

Section 1003.19 of the regulations provides that "[c]ustody and bond determinations made

by the service pursuant to 8 CFR part 1236 may be reviewed by an Immigration Judge pursuant to 8 CFR part 1236." 8 C.F.R. § 1003.19(a). "Consideration by the Immigration Judge of an application or request of a respondent regarding custody or bond under this section shall be separate and apart from, and shall form no part of, any deportation or removal hearing or proceeding. The determination of the Immigration Judge as to custody status or bond may be based upon any information that is available to the Immigration Judge or that is presented to him or her by the alien or the Service." *Id.* § 1003.19(d). "[A]n immigration judge may not redetermine conditions of custody imposed by the Service with respect to ... [a]liens described in section 237(a)(4) of the Act." *Id.* § 1003.19(h)(2)(i)(C). However, "with respect to paragraphs (h)(2)(i)(C), (d), and (E) of this section, nothing in this paragraph shall be construed as prohibiting an alien from seeking a determination by an immigration judge that the alien is not properly included within any of those paragraphs." *Id.* § 1003.19(h)(2)(ii).

"An appeal from the determination by an Immigration Judge may be taken to the Board of Immigration Appeals pursuant to § 1003.38." *Id.* § 1003.19(f); § 1003.38 ("Decisions of Immigration Judges may be appealed to the Board of Immigration Appeals ...."); § 1003.1(b)(7) ("Appeals may be filed with the Board of Immigration Appeals from ... [d]eterminations relating to bond, parole, or detention of an alien as provided in 8 CFR part 1236, Subpart A."). The decision of the immigration judge is not final when certified to the board. *Id.* § 1003.39. The BIA is "charged with the review of those administrative adjudications under the Act that the Attorney General may by regulation assign to it." *Id.* § 1003.1(d)(1). "The Board shall resolve the questions before it in a manner that is timely, impartial, and consistent with the Act and regulations." *Id.* In addition, "the Board, through precedent decisions, shall provide clear and uniform guidance to the

22

Service, the immigration judges, and the general public on the proper interpretation and administration of the Act and its implementing regulations." *Id.* On appeal from an immigration judge's decision, "[t]he Board will not engage in de novo review of findings of fact determined by an immigration judge." *Id.* at § 110.1(d)(3)(i). Rather, "[f]acts determined by an immigration judge, including findings as to the credibility of testimony, shall be reviewed only to determine whether the findings of the immigration judge are clearly erroneous." *Id.* "The Board may review questions of law, discretion, and judgment and all other issues in appeals from decisions of immigration judges de novo." *Id.* § 1003.1(d)(3)(ii). Unless the BIA issues a summary dismissal, "the Board member or panel to which the case is assigned shall issue a decision on the merits as soon as practicable, with a priority for cases or custody appeals involving detained aliens." *Id.* § 1003.1(e)(8). Except in exigent circumstances, "the Board shall dispose of all appeals assigned to a single Board member within 90 days of completion of the record on appeal, or within 180 days after an appeal is assigned to a three-member panel ...." *Id.* § 1003.1(e)(8)(i). "The provisions of [paragraph (e)(8)] establishing time limits for the adjudication of appeals reflect an internal management directive in favor of timely dispositions, but do not affect the validity of any decision issued by the Board and do not, and shall not be interpreted to, create any substantive or procedural rights enforceable before any immigration judge or the Board, or in any court of equity or law." *Id.* § 1003.1(e)(8)(vi).[18]

Section 1003.19 also provides for automatic and discretionary stays of custody and bond decisions on appeal to the BIA. Under the general discretionary stay authority, "[t]he Board of Immigration Appeals (Board) has the authority to stay the order of an immigration judge

---

[18]The Supreme Court has held that this provision "simply forbids court to construe *that section* 'to create any ... procedural right or benefit that is legally enforceable'; it does not deprive an alien of the right to rely on 28 U.S.C. § 2241 to challenge detention that is without statutory authority." *Zadvydas v. Davis*, 533 U.S. 678, 687-88 (2001).

redetermining the conditions of custody of an alien when the department of Homeland Security appeals the custody decision or on its own motion.  DHS is entitled to seek a discretionary stay (whether or not on an emergency basis) from the Board in connection with such an appeal at any time." *Id.* § 1003.19(i)(1).  Under the automatic stay, "[i]n any case in which DHS has determined that an alien should not be released or has set a bond of $10,000 or more, any order of the immigration judge authorizing release (on bond or otherwise) shall be stayed upon DHS's filing of a notice of intent to appeal the custody redetermination (Form EOIR-43) with the immigration court within one business day of the order, and, except as otherwise provided in 8 CFR 1003.6(c), shall remain in abeyance pending decision of the appeal by the Board.  The decision whether or not to file Form EOIR-43 is subject to the discretion of the Secretary." *Id.* § 1003.19(i)(2).  To preserve an automatic stay, the attorney for DHS shall file with the notice of appeal a certification by a senior legal official that he has approved the filing of the notice of appeal and that he is satisfied that the contentions justifying the continued detention of the alien have evidentiary support, and the legal arguments are warranted by existing law or by a non-frivolous argument for the extension, modification, or reversal of existing precedent or the establishment of new precedent.  *Id.* § 1003.6(c).  Further, "[t]he Board will track the progress of each custody appeal which is subject to an automatic stay in order to avoid unnecessary delays." *Id.* § 1003.6(c)(3).  And, "[i]f the Board has not acted on the custody appeal, the automatic stay shall lapse 90 days after the filing of the notice of appeal." *Id.* § 1003.(c)(4).  "DHS may seek a discretionary stay pursuant to 8 CFR § 1003.19(i)(1) to stay the immigration judge's order in the event the Board does not issue a decision on the custody appeal within the period of the automatic stay.  DHS may submit a motion for discretionary stay at any time after the filing of its notice of appeal of the custody decision, and at

a reasonable time before the expiration of the period of the automatic stay, and the motion may incorporate by reference the arguments presented in its brief in support of the need for continued detention of the alien during the pendency of the removal proceedings.  If DHS has submitted such a motion and the Board is unable to resolve the custody appeal within the period of the automatic stay, the Board will issue an order granting or denying a motion for discretionary stay pending its decision on the custody appeal." *Id.* § 1003.6(c)(5).  "If the Board authorizes an alien's release (on bond or otherwise), denies a motion for discretionary stay, or fails to act on such a motion before the automatic stay period expires, the alien's release shall be automatically stayed for five business days. If, within that five-day period, the Secretary of Homeland Security or other designated official refers the custody case to the Attorney General pursuant to 8 CFR 1003.1(h)(1), the alien's release shall continue to be stayed pending the Attorney General's consideration of the case.  The automatic stay will expire 15 business days after the case is referred to the Attorney General.  DHS may submit a motion and proposed order for a discretionary stay in connection with referring the case to the Attorney General. ...  The Attorney General may order a discretionary stay pending the disposition of any custody case by the Attorney General or by the Board." *Id.* § 1003.6(d).

The use of presumptions to "no-bond" certain classes of aliens such as those described in section 237(a)(4)(D), regardless of whether DHS actually charges the alien with removal on that basis, as well as the creation and manner of use of automatic and discretionary stays appear to be matters within the discretion of the Attorney General regarding the application of section 1226 under *Loa-Herrera*.  *See* 71 Fed. Reg. 57873, 57880 ("The Attorney General and the Secretary have exercised their discretion to create separate but interrelated systems for determining whether aliens in removal proceedings ought to be released); *Id.* ("The immigration judges and the Board are

delegates of the Attorney General in carrying out his authority under the INA."); *Id.* ("The Attorney General has determined, however, that certain bond cases require additional safeguards before an alien is released during the pendency of removal proceedings against him or her.  In these cases, the immigration judge's order is only an interim one, pending review and the exercise of discretion by another of the Attorney General's delegates, the Board.  Barring review by the Attorney General, it is the Board's decision that the Attorney General has designated as the final agency action with respect to whether the alien merits bond.  Thus, the Attorney General made an operational decision under section 236(a) of the INA with respect to how his discretion should be exercised in a limited class of cases where DHS, which now has independent statutory authority in this area, had sought to detain the alien without bond or with a bond of $10,000 or more and disagrees with the immigration judge's interim custody decision."); *Id.* at 57882 (recognizing that DHS "may choose only to bring a 'lesser' charge such as overstaying a visa, rather than a more serious charge of deportability or inadmissibility, since the end result –removal of the alien from the United States – would be the same in any event and thus an alien charged with overstaying a visa may, depending on the case, be a serious flight risk, a danger to the community, or even a potential threat to the national security." Thus, the Court concludes that it lacks jurisdiction over these specific challenges. However, as noted, the Court finds that, under *Zadvydas* and *Demore*, the Court has jurisdiction over Kambo's third and fifth claims that his detention is without authority and excessively lengthy and violates the Constitution's due process clause as applied to him.  *See Fuller v. Gonzales*, No. Civ. A. 3:04CV2039SRU (D. Conn. April 8, 2005) (holding that petitioner's claim that section 1226(c) was unconstitutional as applied to her was within the court's jurisdiction and that claim need not be exhausted through the BIA because the BIA cannot address constitutional issues).

26

**B. Due Process Challenge to Section 1226(a)**

**1. Applicable Precedents**

In *Carlson v. Landon*, 342 U.S. 524 (1952), the Supreme Court considered whether the Attorney General could continue to detain alien communists at his discretion pending determination as to their deportability. *Id.* at 526. The detainees filed petitions for writ of habeas corpus alleging that the detention without bond was in violation of the Fifth Amendment and the Eighth Amendment. *Id.* at 528-29. The Court noted that, "[s]o long ... as aliens fail to obtain and maintain citizenship by naturalization, they remain subject to the plenary power of Congress to expel them under the sovereign right to determine what noncitizens shall be permitted to remain within our borders." *Id.* at 534. The Court noted that "[t]he power to expel aliens, being essentially a power of the political branches of government, the legislative and executive, may be exercised entirely through executive officers, 'with such opportunity for judicial review of their action as congress may see fit to authorize or permit.' This power is, of course, subject to judicial intervention under the 'paramount law of the constitution.'" *Id.* at 537. The Court further held that "[d]etention is necessarily a part of [the] deportation procedure. Otherwise aliens arrested for deportation would have opportunities to hurt the United States during the pendency of deportation proceedings. Of course purpose to injure could not be imputed generally to all aliens subject to deportation, so discretion was placed by the 1950 Act[19] in the Attorney General to detain aliens without bail ...." *Id.* at 538. The Court noted that the Act did not grant bail as a matter of right, but that release was

---

[19]The Internal Security Act of 1950 provided that "[p]ending final determination of the deportability of any alien taken into custody under warrant of the Attorney General, such alien may, in the discretion of the Attorney General (1) be continued in custody; or (2) be released under bond in the amount of not less than $500, with security approved by the Attorney General; or (3) be released on conditional parole." *Id.* at 528 n.5. Thus, the Act was essentially identical to section 1226(a).

discretionary with the Attorney General.  *Id.* at 539.  The Court concluded that the Attorney General's decision could be "overridden where it is clearly shown that it 'was without a reasonable foundation." *Id.* at 540-41.  However, "[t]he refusal of bail [was] not arbitrary or capricious or an abuse of power.  There is no denial of the due process clause of the Fifth Amendment under circumstances where there is reasonable apprehension of hurt from aliens charged with a philosophy of violence against this Government." *Id.* at 541.

The Court also considered "the constitutionality of this delegation of authority."  Petitioners objected to the "alleged unbridled delegation of legislative power in that the Attorney General is left without standards to determine when to admit to bail and when to detain." *Id.* at 542.  The Court held that "Congress need not make specific standards for each subsidiary executive action in carrying out a policy." *Id.* at 543.  "A wide range of discretion in the Attorney General as to bail is required to meet the varying situations arising from the many aliens in this country." *Id.*  "The policy and standards as to what aliens are subject to deportation are, in general, clear and definite." *Id.*  "In carrying out that policy the Attorney General is not left with untrammeled discretion as to bail. Courts review his determination.  Hearings are had, and he must justify his refusal of bail by reference to the legislative scheme to eradicate the evils of Communist activity." *Id.*  "When in the judgment of the Attorney General an alien Communist may so conduct himself pending deportation hearings as to aid in carrying out the objectives of the world communist movement, that alien may be detained." *Id.* at 544.  "This is a permissible delegation of legislative power because the executive judgment is limited by adequate standards.  The authority to detain without bail is to be exercised within the framework of the Subversive Activities Control Act to guard against Communist activities pending deportation hearings." *Id.*  The Court did not "see that such discretion violates the Due

Process Clause of the Fifth Amendment." *Id.* The Court did note that "the problem of habeas corpus after unusual delay in deportation hearings is not involved in this case." *Id.* at 546.

In *Reno v. Flores*, 507 U.S. 292 (1993), the Supreme Court considered the detention of a class of juvenile aliens detained during removal proceedings. The Court recognized that Congress "has given the Attorney General broad discretion to determine whether, and on what terms, an alien arrested on suspicion of being deportable should be released pending the deportation hearing." *Id.* at 294-95. The Court noted that "[t]he Board of Immigration Appeals has stated that '[a]n alien generally ... should not be detained or required to post bond except on a finding that he is a threat to the national security ... or that he is a poor bail risk." *Id.* (quoting *Matter of Patel*, 15 I. & N. Dec. 666 (1976)). In the case of alien juveniles, however, the INS could not simply send them "off into the night on bond or recognizance" and thus problems arose when the juvenile's parents had not also been detained. *Id.* at 295. The INS had issued regulations attempting to deal with the problem of juvenile detainees. The habeas petitioners challenged the INS regulation on the ground that it violated substantive due process, that it violated procedural due process, and that even if it infringed no constitutional rights, it exceeded the Attorney General's authority. Because it was a facial challenge to the regulation, the habeas petitioners had to show that no set of circumstances existed under which the regulation would be valid. *Id.* at 301.

The Court first considered the substantive due process challenge, noting that substantive due process forbids the government to infringe certain "fundamental" liberty interests at all, no matter what process is provided, unless the infringement is narrowly tailored to serve a compelling state interest. *Id.* at 302. The Court concluded that institutional custody over unaccompanied juveniles aliens was constitutional. The Court noted that "Congress has the authority to detain aliens

suspected of entering the country illegally pending their deportation hearings" and that in the exercise of its immigration power, Congress "regularly makes rules that would be unacceptable if applied to citizens." *Id.* at 305. The Court stated that Congress had eliminated any presumption of release pending deportation, committing that determination to the discretion of the Attorney General. However "the INS regulation must still meet the (unexacting) standard of rationally advancing some legitimate government purpose." *Id.*

In considering the procedural due process claim, the Court recognized that "the Fifth Amendment entitles aliens to due process of law in deportation proceedings." *Id.* at 306. To determine whether the alien juveniles had received it, the Court reviewed the procedures the INS had employed. *Id.* at 306-07. The Court determined that the procedures were adequate – "insofar as this facial challenge is concerned, due process is satisfied by giving the detained alien juveniles the *right* to a hearing before an immigration judge." *Id.* at 309. The Court also declined to assume on the facial challenge that an excessive delay would invariably ensue, particularly since there was no evidence of such delay, even in isolated instances. *Id.* at 309.

The Court next considered the statutory challenge that the regulation went beyond the scope of the Attorney General's discretion to continue custody over arrested aliens. The Court held that "[t]hat contention must be rejected if the regulation has a 'reasonable foundation,' that is, if it rationally pursues a purpose that it is lawful for the INS to seek." *Id.* at 309. The Court recognized that it has previously stated that, "at least in certain contexts, the Attorney General's exercise of discretion under § 1252(a)(1) [now § 1226(a)] requires 'some level of individualized determination.'" *Id.* at 313 (quoting *INS v. NCIR*, 502 U.S. 183, 194 (1991)). But this did not mean that the Service must "forswear the use of reasonable presumptions and generic rules." *Id.* Thus,

30

the Service could make only limited individual determinations – was the person deportable, was the person a juvenile, was there an available adult relative or legal guardian, were there exceptional circumstances requiring consideration of release to someone else – consistent with the regulation without problem.  The Court also rejected a challenge to the regulation that it could permit the Service to hold the juvenile in detention indefinitely.  It reasoned that "[t]he period of custody is inherently limited by the pending deportation hearing, which must be concluded with 'reasonable dispatch' to avoid habeas corpus."  *Id.* at 314.[20]  There was no evidence that alien juveniles were being held for undue periods or that habeas corpus was insufficient to remedy particular abuses.  *Id.* Thus, the Court concluded that the regulation was a "reasonable response to the difficult problems presented when the Service arrests unaccompanied alien juveniles" and it complied with the Constitution and the relevant statute.  *Id.* at 315.

In *Zadvydas v. Davis*, 533 U.S. 678 (2001), the Court considered habeas challenges brought by resident aliens who had been ordered removed and who were held in custody beyond the 90-day removal period due to the government's inability to effect their removal.  As noted by the Court, when an alien has been found to be unlawfully present in the United States and a final order of removal has been entered, the Government ordinarily secures the alien's removal during a subsequent 90-day statutory "removal period," during which time the alien normally is held in custody.  *Id.* at 682.  Title 8 U.S.C. § 1231(a)(6) authorizes further detention if the Government fails to remove the alien during those 90 days.  The Court framed the issue as "whether this post-removal-period statute authorizes the Attorney General to detain a removable alien *indefinitely* beyond the

---

[20]At the time, section 1252(a)(1) expressly provided a statutory right to seek a writ of habeas corpus if the Attorney General was not processing the deportation proceeding with reasonable dispatch.

removal period or only for a period *reasonably necessary* to secure the alien's removal."   *Id.*
(emphasis in original).   Based on its "conclusion that indefinite detention of aliens [who were
admitted but subsequently ordered removed] would raise serious constitutional concerns," the Court
construed "the statute to contain an implicit 'reasonable time' limitation, the application of which
is subject to federal-court review."   *Id.*   The Government argued that the statute itself contained no
time limit and thus, whether to continue to detain such an alien and for how long was up to the
Attorney General, not the courts.   *Id.* at 689.   However, the Court concluded that "[a] statute
permitting indefinite detention of an alien would raise a serious constitutional problem" under the
Due Process Clause of the Fifth Amendment.

Recognizing that "[f]reedom from imprisonment – from government custody, detention, or
other forms of physical restraint – lies at the heart of the liberty that Clause protects," "government
detention violates that Clause unless the detention is ordered in a *criminal* proceeding with adequate
procedural protections, or, in certain special and 'narrow' nonpunitive 'circumstances,' where a
special justification, such as harm – threatening mental illness, outweighs the 'individual's
constitutionally protected interest in avoiding physical restraint."   *Id.*   The Court then noted that the
proceedings were civil, not criminal, and assumed they were nonpunitive in purpose and effect, but
concluded that there was "no sufficiently strong special justification here for indefinite civil
detention – at least as administered under this statute."   The two regulatory goals asserted by the
Government – ensuring the appearance of aliens at future immigration proceedings and preventing
danger to the community – were insufficient to justify indefinite detention.   The first goal was "weak
or nonexistent where removal seems a remote possibility at best."   The second justification "does
not necessarily diminish over time," but "preventive detention based on dangerousness" had been

upheld only when "limited to specially dangerous individuals and subject to strong procedural protections." *Id.* at 691. Further, "[i]n cases in which preventive detention is of potentially *indefinite* duration, [the Court had] also demanded that the dangerousness rationale be accompanied by some other special circumstance, such as mental illness, that helps create the danger." *Id.* The Court then noted that the confinement at issue was not limited, but potentially permanent, and the statute did not apply narrowly to a small segment of particularly dangerous individuals, but broadly to aliens ordered removed for many and various reasons, including tourist visa violations. *Id.* Further, the only procedural protections for the alien were in the administrative proceedings, where the alien bore the burden of proving that he was not dangerous, without significant later judicial review. *Id.* at 692. "The serious constitutional problem arising out of a statute that, in these circumstances, permits an indefinite, perhaps permanent, deprivation of human liberty without any such protection [of judicial review] is obvious." *Id.* Though Congress has "plenary power" to create immigration law, that power is subject to important constitutional limitations. *Id.* at 694. The Court rejected the argument that aliens have a diminished liberty interest, and held that "an alien's liberty interest is, at the least, strong enough to raise a serious question as to whether, irrespective of the procedures used, the Constitution permits detention that is indefinite and potentially permanent." *Id.* at 696. The Court found no clear congressional intent to grant the Attorney General the power to hold an alien ordered removed in confinement indefinitely. *Id.* at 697. Thus, while the use of the term "may" indicated discretion, it did "not necessarily suggest unlimited discretion." *Id.*

The Government pointed to statutes such as § 1226(c) and § 1231(a)(2), which require detention, to show that mandatory detention is the rule, while discretionary release is the narrow exception. But the Court noted that the post-removal-detention statute applied broadly to not only

33

terrorists and criminals, but also to ordinary visa violators, and "more importantly, post-removal-period detention, unlike detention pending a determination of removability or during the subsequent 90-day removal period, has no obvious termination point." *Id.* at 697. Thus, to avoid a serious constitutional threat, the Court concluded that, once removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute. Thus, "[w]hether a set of particular circumstances amounts to detention within, or beyond, a period reasonably necessary to secure removal is determinative of whether the detention is, or is not, pursuant to statutory authority." The basic federal habeas corpus statute grants the federal courts authority to answer that question. *Id.*

The Court then held that "the habeas court must ask whether the detention in question exceeds a period reasonably necessary to secure removal. It should measure reasonableness primarily in terms of the statute's basic purpose, namely, assuring the alien's presence at the moment of removal. Thus, if removal is not reasonably foreseeable, the court should hold continued detention unreasonable and no longer authorized by statute. In that case, of course, the alien's release may and should be conditioned on any of the various forms of supervised release that are appropriate in the circumstances, and the alien may no doubt be returned to custody upon a violation of those conditions." *Id.* The Court recognized a six-month "presumptively reasonable period of detention." After that period, "once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing. And for detention to remain reasonable as the period of prior postremoval confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink." *Id.* at 701.

In *Demore v. Kim*, 538 U.S. 510 (2003), the Court considered a habeas petition brought by

a lawful permanent resident alien challenging the no-bail provision of § 1226(c), which mandates detention of criminal aliens during removal proceedings.  The Court held that "Congress, justifiably concerned that deportable criminal aliens who are not detained continue to engage in crime and fail to appear for their removal hearings in large numbers, may require that persons such as respondent be detained for the brief period necessary for their removal proceedings."  *Id.* at 513.  The alien in *Demore* conceded that he was deportable, but challenged the constitutionality of § 1226(c) itself, arguing that his detention violated due process because the INS had made no determination that he posed either a danger to society or a flight risk.  The Ninth Circuit had held that § 1226(c) violated substantive due process as applied to the alien because he was a permanent resident alien.  The Supreme Court reversed.  Though "[i]t is well established that the Fifth Amendment entitles aliens to due process of law in deportation proceedings," the Court had also recognized "detention during deportation proceedings as a constitutionally valid aspect of the deportation process."  *Id.* at 523.  The Court discussed *Carlson v. Landon*, noting that the Court had "rejected the aliens' claims that they were entitled to be released from detention if they did not pose a flight risk, explaining that '[d]etention is necessarily a part of this deportation procedure.'" *Id.*  Congress had chosen to make communist aliens deportable based on its understanding of Communists' attitude toward the use of force and violence, and the Court concluded that the INS could deny bail to the detainees by reference to the legislative scheme, even without any finding of flight risk.  The aliens in *Carlson* had not been found individually dangerous – "the only evidence against them was their membership in the Communist Party and 'a degree ... of participation in Communist activities.'"  *Id.* at 524-25.  The Court in *Demore* even noted in a footnote that Justice Black's dissent in *Carlson* had noted that, in at least one case, the alien had been found not likely to engage in any subversive activities.  *Id.*

at 525 n.8.

The *Demore* Court then considered *Reno v. Flores*, noting that the *Reno* Court "emphasized that 'reasonable presumptions and generic rules,'" even when made by the INS rather than Congress, are not necessarily impermissible exercises of Congress' traditional power to legislate with respect to aliens." *Id.* at 526.  Thus, "as with prior challenges to detention during deportation proceedings, the Court in *Flores* rejected the due process challenge and upheld the constitutionality of the detention." *Id.*

The Court rejected the lower courts' reliance on *Zadvydas* in holding 1226(c) unconstitutional, stating that "*Zadvydas* is materially different from the present case in two respects." *Id.* at 527.  First, in *Zadvydas*, because the aliens challenging their detention following final orders of deportation were ones for whom removal was no longer practically attainable, the detention there did not serve its purported immigration purpose.  Where, as there, detention's goal is no longer practically attainable, detention no longer bears a reasonable relation to the purpose for which the individual was committed."  However, section 1226(c) governs detention of deportable criminal aliens pending their removal proceedings.  "Such detention necessarily serves the purpose of preventing deportable criminal aliens from fleeing prior to or during their removal proceedings, thus increasing the chance that, if ordered removed, the aliens will be successfully removed." *Id.* at 528. The Court noted that Congress had before it evidence suggesting that permitting discretionary release of aliens pending their removal hearings would lead to large numbers of deportable criminal aliens skipping their hearing and remaining at large.  The Court rejected the argument that the statistics did not demonstrate that individualized bond hearings are ineffective or burdensome, noting that "when the Government deals with deportable aliens, the Due Process Clause does not require it to employ

the least burdensome means to accomplish its goal." *Id.* at 528.

The Court distinguished *Zadvydas* on the second ground that, while the period of detention in *Zadvydas* was indefinite and potentially permanent, the detention under § 1226(c) was of a much shorter duration – "not only does detention have a definite termination point, in the majority of cases it lasts for less than the 90 days [the Court] considered presumptively valid in *Zadvydas*." *Id.* at 529.

In its conclusion, the Court cited *Wong Wing*, 163 U.S. 228, 235 (1896), *Carlson v. Landon*, and *Reno v. Flores* and stated that "[d]etention during removal proceedings is a constitutionally permissible part of that process.  The INS detention of respondent, a criminal alien who has conceded that he is deportable, for the limited period of his removal proceedings, is governed by these cases."

### 2. Analysis

"Freedom from bodily restraint has always been at the core of the liberty protected by the Due Process Clause from arbitrary governmental action." *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992). "In the substantive due process analysis, it is the [Government]'s affirmative act of restraining the individual's freedom to act on his own behalf – through incarceration, institutionalization, or other similar restraint of personal liberty – which is the 'deprivation of liberty' triggering the protections of the Due Process Clause ...." *Deshaney v. Winnebago County Dept. of Social Services*, 489 U.S. 189, 200 (1989).  Thus, incarceration by the government triggers heightened, substantive due process scrutiny – there must be a "sufficiently compelling" governmental interest to justify such action, either a punitive interest in imprisoning a convicted criminal or a regulatory interest – that outweighs the individual's constitutionally protected interest in avoiding physical restraint. The Supreme Court has already held that detention during removal proceedings is civil, not criminal.  Therefore, the

detention must be supported by an adequate regulatory interest.  Two regulatory interests generally support detention during removal proceedings – ensuring the alien's availability for removal if and when a final order of removal is issued, and protecting the public from potential harm if the alien is released.

In this case, Immigration Judge ruled that the discretionary factors, which include flight risk and potential for harm, did not weigh against Kambo's release on bond.  DHS appealed this decision, and has invoked the automatic and discretionary stay provisions of the regulations.  These stays "preserve[] the status quo briefly while DHS seeks expedited appellate review of the immigration judge's custody decision."  71 Fed. Reg. 57873, 57880.  The BIA had remanded to the immigration judge to determine whether DHS was substantially unlikely to prevail on its contention that Kambo was an alien described in § 237(a)(4) (if, hypothetically, he had been charged as inadmissible under that section).  The immigration judge found that the Government was not likely to prevail.  At the time that DHS invoked these stays, the purposes of preserving the status quo briefly during the appeal and protecting the public would have been served.  As noted, the Attorney General sometimes decides to charge someone as removable under a "lesser" charge rather than attempting to prove a more difficult charge, such as in this case.  The Court will presume without deciding that this is permissible and finds it reasonable for the Government to invoke the stay and continue to detain an alien pending resolution of the custody appeal in such circumstances (where the Government has reason to believe that the alien may be dangerous based on some classification other than the one they have charged him as removable under).  The Supreme Court has allowed DHS and the Attorney General to use certain presumptions regarding classes of aliens, and thus the Court will also presume that the no-bond, no-review classification of "aliens described in section 237(a)(4)" is permissible.

However, as time passed, the immigration judge issued his decision on the merits, finding that Kambo was not an alien described in section 237(a)(4)(D).  This is primarily a factual determination, and the BIA reviews such factual determinations only to determine if they are "clearly erroneous."  Thus, at this point in time, there is a significant likelihood that Kambo is not subject to removal and a judge has found that he is not within the no-bond, no-review class of aliens described in section 237(a)(4)(D).  The Immigration Judge also found that the discretionary factors weighed in favor of release on bond.  Given this posture, it appears necessary then "to inquire whether the detention is not to facilitate deportation, or to protect against risk of flight or dangerousness, but to incarcerate for other reasons."  *Kim*, 538 U.S. at 532 (Kennedy, J., concurring); *see also Ly v. Hansen*, 351 F.3d 263, 271 (6th Cir. 2003) ("The actual removability of a criminal alien therefore has bearing on the reasonableness of his detention prior to removal ...."); *Hussain v. Gonzales*, 492 F. Supp. 2d 1024, 1034 (E.D. Wis. 2007) (denying relief to detained alien on various challenges but recognizing that cases in which courts have found pre-removal detention for lengthy periods of time unconstitutional involved situations where "there was already a strong suggestion that removal was not a practical possibility, even though the removal proceeding was not yet complete") .

When asked by the Court what regulatory purpose was served by continuing to detain Kambo at this point, the Government was unable or unwilling to articulate any such purpose.  Kambo has been detained for almost one year.  "This period is well beyond the short period of detention pending a determination of removability that the Supreme Court assumed was typical when it decided *Kim*.  Petitioner's eleven to twelve month detention is also far longer than the six month presumptively reasonable period of post-removal detention set forth by the Court in *Zadvydas*."  *Uritsky v. Ridge*, 286 F. Supp. 2d 842, 946-47 (E.D. Mich. 2003).  As in *Uritsky*, the Court finds that the immigration

judge's rulings on the merits suggests that there is a significant likelihood that Petitioner will not be removed, and because the immigration judge has found that Kambo's continued detention is not justified and that he is not an alien described in section 237(a)(4)(D), the writ of habeas corpus should be granted in accordance with the immigration judge's May 2007 order.

Though section 1226(a) and the facts of this case in particular do not suggest that Kambo may be subject to indefinite detention, the Government must still justify its continued detention with an adequate regulatory purpose. *See Zadvydas*, 533 U.S. at 699-70; *see also id* at 690 (noting that where detention's goal is no longer practically attainable, detention no longer bears a reasonable relation to the purpose for which the individual was committed or detained). Since removal seems unlikely, ensuring Kambo's availability for removal is too weak a justification to overcome Kambo's liberty interests. Further, the Immigration Judge's ruling on the merits has diminished any argument that Kambo is subject to the no-bond, no-review provisions of the regulations or that he poses any kind of threat should he be released. "Under these circumstances, there is simply no good reason to deny him his freedom pending completion of the removal proceedings." *Parlak*, 374 F. Supp. 2d. at 562.[21]

### Conclusion

This Court has jurisdiction to consider Petitioner Kambo's constitutional challenge to his detention under section 1226(a). Petitioner has been detained for almost one year, a longer period than was contemplated by the Supreme Court in *Demore v. Kim*. Though not "potentially

---

[21]Of course, as noted at the hearing, circumstances do change. If the BIA reverses the immigration judge's decision on the merits and thus the likelihood of removal and a finding that Kambo is an alien described in section 237(a)(4)(D) are no longer remote, then the Government may exercise its discretion under section 1226(a) to revoke bond and return Kambo to custody.

permanent" or "indefinite," the detention has been lengthy and has the potential to be much lengthier should BIA affirm the immigration judge's ruling and DHS choose to appeal that decision to the Attorney General.  However, more important than the mere length of the detention is the fact that, at this point in time, the government has not demonstrated a reasonable justification for the continued detention.  Given the immigration judge's determination that Kambo is not an alien described in section 237(a)(4)(D) and is not inadmissible and his granting of an adjustment of status, the Court finds that not only is removal not reasonably foreseeable, there is a substantial likelihood that Kambo will not be removed.  In addition, the immigration judge has evaluated the discretionary factors and determined that Kambo should be released on bond.  The government has not articulated a justification for the continued detention under these circumstances.  Accordingly, the Court finds that Kambo's continued detention under these circumstances violates his right to substantive due process under the Fifth Amendment.  The Court therefore orders that the immigration judge's May 11, 2007 order be reinstated and that Kambo be released on bond in accordance with that order.

Kambo's Petition for Writ of Habeas Corpus is GRANTED as explained herein.

Docket number 3 is DISMISSED AS MOOT.

Docket number 13 is GRANTED.

Docket number 15 is DENIED.

SIGNED this 18th day of October, 2007.

XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE